## AFFIDAVIT

I, Brad Gullicksrud, being duly sworn, state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI for approximately three years. I am currently assigned to the FBI's North Shore Safe Streets Gang Task Force (the "FBI Task Force"), which is comprised of FBI special agents, troopers from the Massachusetts State Police, officers from the Chelsea, Lawrence, and Lynn Police Departments, Essex County Deputy Sheriffs, and other law enforcement officials. The mission of the Task Force is to identify, investigate, disrupt, and dismantle violent criminal organizations operating in cities north of Boston.

2. Based on my training and experience, I know that it is a violation of Title 18, United States Code, Section 922(g)(5)(A) for an alien illegally or unlawfully in the United States to possess a firearm which had previously traveled in interstate commerce. An "alien" refers to any person who is not a citizen or national of the United States. See 8 U.S.C. §1101(a)(3); 18 U.S.C. §922(y)(1)(A).

3. I submit this affidavit in support of a criminal complaint charging FNU LNU, a/k/a "Tony Colon," a/k/a "Henry Enrique," a/k/a "Anderson Chacon," a/k/a "Scooby," with being an alien in possession of a firearm, in violation of 18 U.S.C. §922(g)(5)(A). The facts set forth herein are based upon my involvement in this investigation, a review of a consensually recorded meeting, a review of reports written by law enforcement officers in connection with this investigation, and discussions about the investigation with those officers. In submitting this affidavit, I have not included every fact known to me about the investigation, but only those facts that I believe are sufficient to establish probable cause for the crime set forth in the accompanying criminal complaint.

4. On or about April 26, 2015, in connection with a large-scale investigation into the transnational criminal organization known as La Mara Salvatrucha, or MS-13, agents directed a cooperating witness (CW-1)[1] to purchase a firearm from an individual. During a consensually recorded telephone call, the individual directed CW-1 to contact "Scooby" for the firearm. The individual provided CW-1 with a telephone number for "Scooby." Thereafter, CW-1 exchanged a series of consensually recorded text messages with the individual and "Scooby," including one text exchange that included a photograph of the firearm CW-1 was to purchase from "Scooby."

5. On or about April 29, 2015, agents met with CW-1, searched CW-1 and CW-1's automobile with negative results, equipped CW-1 with a transmitter and a video / audio recording device, provided CW-1 with $800 in official agency funds (OAF) to purchase the firearm, and directed CW-1 to meet "Scooby" at his home at 80 Chestnut Street in Everett to purchase the firearm. Agents surveilled CW-1 to the area of 80 Chestnut Street. A Spanish-speaking agent overheard CW-1 place a recorded call to "Scooby" to tell "Scooby" that CW-1 was parked near 82 Chestnut Street and to come out to meet CW-1.

6. At approximately 6:15 p.m., agents observed a man enter CW-1's automobile parked on Chester Street. Over the transmitter, Spanish-speaking agents listened as CW-1 and "Scooby" had a lengthy conversation in Spanish. At approximately 6:45 p.m., agents observed "Scooby" exit CW-1's car and walk down a sidewalk between 78 and 80 Chestnut Street.

---

[1] CW-1 has a criminal record. CW-1 has been paid for its work in the MS-13 investigation. Agents have provided immigration benefits to CW-1 and CW-1's family members to allow them to enter into and remain in the United States. Agents have advised CW-1 and its family that they will take steps necessary to ensure the safety of CW-1 and CW-1's family. Agents also determined that CW-1 had participated in unauthorized street robberies while working on the MS-13 investigation. CW-1 initially denied being involved in the robberies but eventually admitted to them. CW-1 and its family are currently in the federal witness protection program.

2

7. After "Scooby" got out of CW-1's car, agents followed CW-1 to a pre-determined meeting location. Agents again searched CW-1 and CW-1's automobile with negative results. CW-1 turned in a video-audio recording device, a transmitter, and a Smith and Wesson .40 caliber pistol and a magazine containing five rounds of .40 caliber ammunition. Agents then debriefed CW-1. CW-1 advised agents that "Scooby" entered CW-1's car and provided CW-1 with the gun. CW-1 took out the magazine to make sure the gun was not loaded and observed that the magazine contained several rounds of ammunition. "Scooby" advised CW-1 that there were eight bullets in the magazine. CW-1 then handed "Scooby" the $800 in OAF. Agents reviewed the video recording and observed "Scooby" rack the firearm before handing the firearm to CW-1. The video also showed "Scooby" accepting money from CW-1.[2]

8. On February 27, 2017, Jose DePena, a Massachusetts State Trooper and an FBI Task Force Agent, observed "Scooby" walking in the area of Everett Avenue in Chelsea. Trooper DePena recognized "Scooby," in part, because he had spoken to and photographed "Scooby" during a field interview on or about March 11, 2016 in East Boston. During that field interview, "Scooby" provided Trooper DePena with the name "Anderson Chacon."

9. Trooper DePena approached "Scooby" and asked him for his name. "Scooby" replied "Tony Colon." When Trooper DePena advised "Scooby" that on a different occasion "Scooby" had provided him with a different name, "Scooby" became very nervous and appeared ready to run. Trooper DePena conducted a pat-frisk of "Scooby" and recovered a knife from a backpack "Scooby" was carrying. Trooper DePena placed "Scooby" under arrest for possessing a knife with a blade longer than two inches.

---

[2] The video recording device malfunctioned after "Scooby" handed the firearm to CW-1 but the audio recording device captured the meeting.

10. On the evening of February 27, 2017, during a videotaped post-Miranda interview, "Scooby" advised that he is not lawfully present in the United States, that he entered the United States illegally from Mexico, that he is a member of MS-13, and that his MS-13 gang name is "Scooby." When agents ran "Scooby" fingerprints through law enforcement databases, they determined that his prints came back to "Henry Enrique," a Hispanic male who had outstanding arrest warrants in open Massachusetts state court cases. Agents reviewed the video recording of April 29, 2015 controlled purchase of the firearm and identified the man who sold CW-1 the firearm as FNU LNU, a/k/a "Tony Colon," a/k/a "Henry Enrique," a/k/a "Anderson Chacon," a/k/a "Scooby," the man arrested by Trooper DePena on February 27, 2017.

11. Based on the make and model of the firearm, Special Agent Mattheu Kelsch of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) determined that the firearm was manufactured outside the Commonwealth of Massachusetts. Thus, the firearm traveled in and affected interstate commerce before April 29, 2015. On or about May 21, 2015, a ballistics expert with the Massachusetts State Police successfully test-fired the firearm.

12. Based on the foregoing, and based on my training and experience, I submit that there is probable cause to believe that on April 29, 2015, in Everett, Massachusetts, FNU LNU, a/k/a "Tony Colon," a/k/a "Henry Enrique," a/k/a "Anderson Chacon," a/k/a "Scooby," was an alien in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(5)(A).

I, Brad Gullicksrud, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information and belief.

Signed under the pains and penalties of perjury this 24 day of March 2017.

Brad Gullicksrud
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 24th day of March, 2017.

The Honorable M. Page Kelley
United States Magistrate Judge