UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANUEL LANDAVERDE<br><br>Defendant. | Criminal No. 17-10125-WGY |

**SENTENCING MEMORANDUM ON BEHALF OF MANUEL LANDAVERDE**

**I.   Introduction**

Manuel Landaverde respectfully submits this sentencing memorandum requesting that, given the nature and circumstances of the offense, his personal history, and the other considerations embodied in 18 U.S.C. § 3553(a), the Court impose a sentence of time served and no monetary fine.

Mr. Landaverde has now been in federal custody since March 30, 2017—over nineteen months[1]—in connection with this offense. PSR ¶ 2. This is Mr. Landaverde's only criminal conviction, and he played only a minimal role in the sprawling MS-13 organization. Mr. Landaverde has negligible formal education and speaks little English. PSR ¶ 82. While these circumstances may have played a role in his recent poor decision-making, Mr. Landaverde acknowledges that neither of these facts excuses his conduct—he quickly accepted full responsibility for this offense by pleading guilty. PSR ¶¶ 50-51. In light of these factors, Mr.

---

[1] Although Mr. Landaverde has been in federal custody for nineteen months, he has been incarcerated for twenty months because he was placed in immigration custody on February 23, 2017, prior to being transferred to federal custody. PSR ¶ 1.

-1-

Landaverde requests that the Court grant him a two-month[2] downward variance from the United States Sentencing Commission Guidelines ("U.S.S.G." or "the Guidelines") range and sentence him to time served, which will effectively result in his immediate deportation to El Salvador. Indeed, if this Court includes the time that Mr. Landaverde spent in immigration custody after his arrest, Mr. Landaverde's request for time served requires only a four-week variance from the Guidelines range.

## II.   Mr. Landaverde's Background

Mr. Landaverde was born on April 14, 1992 in Chalatenango, El Salvador. PSR ¶ 63. His parents, Manuel Landaverde and Maria Chacon, both fifty-eight years old, are farmers. PSR ¶¶ 63, 65. Mr. Landaverde has ten siblings, five of whom live in El Salvador, and five of whom live in the United States. PSR ¶¶ 66-71. He grew up in an observant Catholic family and often went to Mass with his family in addition to working on the family farm. PSR ¶ 63; Exhibit A. Mr. Landaverde maintains a good relationship with his family, as seen by the supportive letters and statements submitted to this Court by his mother, his sister, and his three-year-old son's mother.[3] PSR ¶¶ 63, 72; Exhibits A and B. Mr. Landaverde's mother, Ms. Chacon, remembers him as a loving, thoughtful, and well-behaved child and states that she "miss[es him] with all [her] heart." Exhibit A. Ms. Chacon also states that Mr. Landaverde supported her financially, in addition to being a caring son. *Id*. His sister, Dinorah, describes him as "a hard worker, who always made time for his family." PSR ¶ 72.

Mr. Landaverde has a three-year-old son named Anderson, who lives with his mother, Alba Tejada, in Texas. PSR ¶ 73. Ms. Tejada wrote a letter of support for the Court to consider,

---

[2] If this Court considers the additional month that Mr. Landaverde spent in state and immigration custody, he has served twenty months and requests only a one-month downward variance from the Guidelines range. PSR ¶ 1.

[3] Anderson has had a birthday since the PSR was written, and is now three years old. *See* PSR ¶ 73.

in which she describes him as a hardworking and supportive father to their son.  Exhibit B.[4]  Mr. Landaverde sent approximately $1,000 per month to Ms. Tejada to support their child prior to his incarceration, and Ms. Tejada respectfully "ask[s] that he be set free from jail so that [her] son can get to know [his dad] as well."  PSR ¶ 73; Exhibit B.

In 2009, at the age of seventeen, Mr. Landaverde entered the United States without legal authorization to escape violence in El Salvador.  PSR ¶ 64.  Mr. Landaverde has only four years of formal education and speaks very limited English.  PSR ¶ 82.  Since arriving in the country, he has worked odd jobs such as painting, landscaping, and cooking to support himself and to send financial support for his son and mother.  PSR ¶¶ 73, 83; Exhibits A and B.

A Massachusetts State Trooper arrested Mr. Landaverde in February 22, 2017 for a violation of a city ordinance.  PSR ¶ 35.  Following an interview with law enforcement, Mr. Landaverde was administratively arrested on immigration charges and detained.  PSR ¶ 37.  On March 24, 2017, Mr. Landaverde was charged as an alien unlawfully possessing a firearm, and on March 30, 2017, Mr. Landaverde was indicted on the firearm possession charge pursuant to 18 U.S.C § 922(g)(5)(A) as well as a racketeering charge pursuant to 18 U.S.C. § 1962(d).  PSR ¶ 1-2.  Mr. Landaverde pleaded guilty to the charges on July 16, 2018.   PSR ¶ 3.  During his incarceration, Mr. Landaverde contemplated the grave mistakes he made and has begun working in the kitchen at the prison.  He is committed to a law-abiding life and understands that he faces deportation at the conclusion of his sentence for this crime.  PSR ¶ 95.  His family is supportive and ready to support him in his rehabilitation post-incarceration.  *See* PSR ¶ 72; Exhibits A and B.

---

[4] Ms. Tejada refers to Mr. Landaverde in her letter by his middle name and nickname, Enrique.

**III.     Guidelines Sentencing Range**

As discussed below, Mr. Landaverde, the Government, and the Probation Department agree that the appropriate advisory sentencing range pursuant to the Guidelines is twenty-one to twenty-seven months imprisonment (criminal history category I, offense level sixteen).  PSR ¶ 52. Pursuant to the plea agreement, the Government agrees to recommend a sentence "**at the low end** of the Guidelines sentencing range."  Plea Agreement at 4 (ECF No. 50) (emphasis added).

     **A.     The Total Offense Level Is Sixteen**[5]

Mr. Landaverde has a Criminal History Score of zero, which falls in criminal history category I.  PSR ¶ 56.  Pursuant to U.S.S.G. § 2E1.1(a)(1), Mr. Landaverde's Base Offense Level for Count I is nineteen.  PSR ¶ 43.  Pursuant to U.S.S.G. § 2K2.1(a)(6)(A), Mr. Landaverde's Base Offense Level for Count II is fourteen, with a four-level increase for possession of a firearm pursuant to U.S.S.G. § 2K2.1(b)(6).[6]  PSR ¶ 42.  This results in a Base Offense Level of eighteen for Count II.  PSR ¶ 42.  As both of Mr. Landaverde's charged counts are interrelated, the two Counts are grouped for the purposes of determining the base offense level.  U.S.S.G. § 3D1.2(c); PSR ¶ 42.[7]  Pursuant to U.S.S.G. § 3D1.3(a), the highest offense level of the two Counts is then used to calculate the Guidelines range, resulting in a Base Offense Level of nineteen.  PSR ¶ 42-43.

---

[5] A Total Offense Level of sixteen yields a sentence of twenty-one to twenty-seven months.

[6] The Government's argument for an ***additional*** four-level increase for trafficking of a firearm in connection with another felony offense pursuant to § 2K2.1(b)(5) is unwarranted.  As Probation correctly points out in Paragraph 88, this adjustment is not applicable here because Mr. Landaverde sold one gun, and the Guidelines require the sale of two or more guns for this adjustment.  *See* U.S.S.G. § 2K2.1, cmt. 13(A)(i).  Notably, the Government agrees, given that the Government did not file objection to probation's initial presentence report.  *See* PSR at 25.

[7] Although Probation cites U.S.S.G § 3D1.2(c) as the appropriate basis for the grouping methodology, PSR ¶ 42, Mr. Landaverde submits that U.S.S.G. § 3D1.2(b) is another basis for grouping Counts I and II.  U.S.S.G. § 3D1.2(b) (endorsing grouping when the counts are "connected by a common criminal objective or constituting part of a common scheme or plan."); *id.* at cmt. 8 (stating charges for conspiracy to commit a substantive act and charges for committing the substantive act should be grouped together).

Mr. Landaverde, the Government, and the Probation Department all agree that Mr. Landaverde promptly admitted his involvement in the charged offense, and as a result, should be granted a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. PSR ¶¶ 50-51; Plea Agreement at 3. Mr. Landaverde truthfully and expediently admitted the conduct that comprises his conviction, and pleaded guilty on July 16, 2018, thereby saving the Government, and this Court, the time and resources they would have expended preparing for a trial. PSR ¶ 50-51. A three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 would result in a Total Offense Level of sixteen (twenty-one to twenty-seven months).

**IV.     The Court Should Sentence Mr. Landaverde to a Term Below the Advisory Guidelines Range Reflecting Time Served**

Mr. Landaverde has been in federal custody for nineteen months, and therefore his request for time served is nearly within the Guidelines range. *See* PSR ¶ 2. He therefore requests a sentence of time served via a downward variance of two months, reflecting the nineteen months he has served in federal custody during the pendency of this matter, as such a sentence is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

**A.     The Court Has Discretion to Impose a Sentence Below the Guidelines Range.**

*United States v. Booker* established that the Guidelines are advisory. 543 U.S. 220 (2005). Post-*Booker*, trial courts are not bound by the Guidelines and reasonableness has become the primary consideration in fashioning an appropriate sentence. "[S]ubject only to the ultimate requirement of reasonableness," courts have the freedom to "impose non-[G]uideline sentences that override the [G]uidelines." *United States v. Jiménez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006), *abrogated on other grounds by Rita v. U.S.*, 551 U.S. 338 (2007). Further, the Guidelines

sentencing range "is not controlling on the question of the substantive reasonableness of a particular sentence." *United States v. Gates*, 709 F.3d 58, 71 (1st Cir. 2013).

### B. The Court, Guided by the Parsimony Principle, Should Consider Various Factors in Determining an Appropriate Sentence.

In determining an appropriate sentence, courts consider: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed …; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established …; (5) any pertinent policy statements [made] by the Sentencing Commission …; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been guilty of similar conduct; and (7) the need to provide restitution to any victims." 18 U.S.C. § 3553(a).

The First Circuit has held that Section 3553(a) "is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008). The overarching principle of sentencing, sometimes known as the parsimony principle, is that the punishment imposed be "sufficient, but not greater than necessary" to comply with the purposes of the statute. 18 U.S.C. §3553(a). This "principle necessarily informs a sentencing court's consideration of the entire constellation of [S]ection 3553(a) factors" and a court should "strive to construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *Rodriguez*, 527 F.3d at 228. As the Court well knows, "[s]entencing necessitates a case-by-case approach, the hallmark of which is flexibility." *United States v. Prosperi*, 686 F.3d 32, 42 (1st Cir. 2012) (internal quotations omitted). An offender's guideline sentencing range provides a "starting point" for the Court, but is ultimately "only one of the factors to consider" in arriving at a just sentence. *Gall v. United States*, 552 U.S. 38, 49, 59 (2007).

**C.     A Nineteen-Month Sentence Satisfies the Factors Enumerated in 18 U.S.C. § 3553(a).**

Incarceration for nineteen months is a penalty that adequately reflects the "seriousness of the offense [of conviction], promote[s] respect for the law, and provide[s] just punishment" as required by Section 3553(a)(2)(A). Mr. Landaverde's personal history is a mitigating factor in this case. Landaverde has no criminal history prior to the instant non-violent offense. PSR ¶¶ 54-61. While Mr. Landaverde acknowledges his guilt in the instant offense, he played a minor role in MS-13, and committed no violent acts as a member of MS-13. *See* PSR ¶¶ 17, 36 (acknowledging Mr. Landaverde was a paro—the lowest level of involvement in MS-13).[8] Additionally, Mr. Landaverde has a limited education—only four years of formal schooling in El Salvador. PSR ¶ 82. Mr. Landaverde never finished his education and does not read, write or speak English. PSR ¶ 82. Regardless, he has supported himself by developing skills in landscaping, painting, and cooking. PSR ¶¶ 82-83. Mr. Landaverde acknowledges his past mistakes and is determined not to repeat them.

A nineteen-month sentence also satisfies the needs for deterrence and protection of the public pursuant to 18 U.S.C. § 3553(a)(2), because in Mr. Landaverde's case the punishment for his crime does not end at the conclusion of his sentenced incarceration. Mr. Landaverde will be deported at the end of his sentence, which will inevitably extend his time in custody. *See* PSR ¶ 95.

Mr. Landaverde acknowledges and accepts responsibility for his wrongdoing. He recognizes that the above considerations do not excuse his offense. However, given the mitigating

---

[8] A paro is a "prospective member … allowed to 'hang around' with members of MS-13 and be observed by the criminal organization." PSR ¶ 17. A paro's role is to remain close to the gang so they can be "observed for loyalty, trustworthiness, and reliability." PSR ¶ 17.

nature of these factors, the proposed sentence is "sufficient, but not greater than necessary" to fulfill the purposes of sentencing.

### V. The Court Should Not Impose Any Other Conditions on Mr. Landaverde

With respect to a potential fine, Mr. Landaverde does not have the financial means to pay a fine, even at the low end of the Guidelines range.  *See* PSR ¶ 85 ("The defendant has no income"). The Guidelines provide that "[t]he court shall provide a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a).  Furthermore, Mr. Landaverde provided financial support for his son prior to his incarceration, and would like to continue to do so upon his release.  Exhibit B.  Consequently, Mr. Landaverde requests that the court not impose any financial penalty beyond the $200 Special Assessment.

### IV. Conclusion

For the reasons set forth above, the Court should impose a sentence of time served and a special assessment of $200.  The evidence before this Court shows that Mr. Landaverde is a family-oriented and hardworking young man who provides financial support for his parents and his child. Exhibits A and B.  As illustrated by the heartfelt letter from Mr. Landaverde's mother, Mr. Landaverde has a support system in place in El Salvador that loves him and wants him home. Exhibit A.  Another two months in prison will not provide any deterrent or punitive value to the United States and only serves to delay Mr. Landaverde's rehabilitation into law-abiding life in El Salvador under the guidance of his parents.  Mr. Landaverde therefore respectfully requests that this Court sentence him to time served.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Manuel Landaverde<br>By his attorneys, |
| Dated: October 26, 2018 | /s/ Joshua S. Levy<br>Joshua S. Levy (BBO No. 563017)<br>Daniela Manrique Escobar (BBO No. 693604)<br>ROPES & GRAY LLP<br>Prudential Tower<br>800 Boylston Street<br>Boston, Massachusetts 02199-3600<br>joshua.levy@ropesgray.com<br>daniela.manrique@ropesgray.com<br>Tel: (617) 951-7000 |

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Joshua S. Levy

**PROPOSED FINDINGS OF FACT AND LAW**

Mr. Landaverde submits the following proposed findings of fact and law:

1. Mr. Landaverde's Base Offense Level is nineteen.

2. Mr. Landaverde has clearly demonstrated acceptance of responsibility for the offense and entered a plea of guilty, warranting a three point reduction from his base level.

3. Mr. Landaverde's Total Offense Level is sixteen.

4. Mr. Landaverde committed only non-violent offenses and has no criminal history.

5. Mr. Landaverde was not a leader within MS-13 and did not engage in violent acts during his MS-13 membership.

6. Mr. Landaverde is a young man who has acknowledged his culpability and demonstrated a desire to reform.

7. Mr. Landaverde merits a two month downward variance in his sentence.

8. Mr. Landaverde has no income and is therefore indigent.

Wherefore, in the context of Mr. Landaverde's personal history, the nature and circumstances of his offenses, in the interest of his rehabilitation which can best be continued upon release, this Court imposes a sentence of imprisonment for time already served and a mandatory special assessment of $200.

 

Judge William G. Young